# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| **JONATHAN BURCHFIELD,** | § | |
| | § | |
| *Individually and on Behalf of* | § | |
| *All Others Similarly Situated* | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 7:18-cv-00042** |
| | § | |
| **BRAVURA INFORMATION** | § | |
| **TECHNOLOGY SYSTEMS, INC., and** | § | |
| **CLAUDINE ADAMS** | § | |
| | § | |
| **Defendants.** | § | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
## AND RELEASE AND STIPULATION OF DISMISSAL WITH PREJUDICE

The Parties jointly move the Court for an Order granting approval of a settlement resolving the unpaid overtime compensation claims of the named and opt-in Plaintiff and future opt-in Plaintiffs. Plaintiff Jonathan Burchfield—individually and on behalf of a class of individuals he seeks to represent (the "Plaintiff Class"), and Defendants—Bravura Information Technology Systems, Inc. and Claudine Adams—through their respective counsel, file this Joint Motion for Approval of Settlement Agreement and Release and Stipulation of Dismissal with Prejudice ("Joint Motion").[1] Burchfield and Defendants (collectively, the "Settling Parties") respectfully state as follows:

---

[1] Burchfield is represented by Cynthia R. Levin Moulton and Lance C. Arney of Moulton, Wilson & Arney, L.L.P. ("MWA") and Peter R. Rosenzweig of Kleinbard LLC. Messrs. Arney and Rosenzweig are referred together as "Plaintiffs' Counsel."

# I.   BACKGROUND

On February 14, 2018, Burchfield filed this lawsuit as a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, alleging that Defendants failed to pay certain overtime compensation to "similarly situated" current and former Aerostat Shift Leads ("Shift Leads").   Defendant Bravura is a defense contractor that provides logistics and maintenance for unmanned aerial vehicles ("UAV") and unmanned aerial systems ("UAS") [more commonly known as "drones"].   Defendant Bravura provides those services to the U.S. military. The Shift Leads in this case perform surveillance work for Defendant Bravura in southern Texas. Defendant Claudine Adams is the Owner, President and Chief Executive Officer of Defendant Bravura and has been at all times relevant hereto.

On September 13, 2018, the Settling Parties filed a Joint Notice of Settlement informing the Court that they reached a settlement agreement in principle.   (Dkt. No. 34)  The Settling Parties spent considerable time for the past nine months negotiating a settlement, as set forth in the Settlement Agreement and Release and Stipulation of Dismissal with Prejudice ("Agreement"), attached hereto as Exhibit "A", which settles and compromises fully all claims asserted with respect to the compensation of the Shift Leads and all claims nationwide arising from or related to the case or which have been or might have been asserted based on or arising out of any acts, facts, transactions, occurrences, representations or omissions alleged.   The settlement encompasses all claims of Burchfield, one Opt-In Plaintiff[2], and the five potential opt-ins to the settlement.   If

---

[2]   As of the filing of this Joint Motion, an Opt-In Consent Form has been filed on behalf of Gregory Lloyd. (Dkt. No. 18)

approved, the settlement will provide very meaningful relief to Burchfield, the Opt-In Plaintiff as well as any other Shift Leads who choose to opt-in.[3]

The attached Declarations are submitted in support of this Joint Motion: (i) Declaration of Jonathan Burchfield (Exhibit "B"); (ii) Declaration of Peter R. Rosenzweig (Exhibit "C"); and (iii) Declaration of Lance C. Arney (Exhibit "D").

This settlement was reached after nine months of time-intensive and detailed, arm's-length settlement negotiations between counsel for the Settling Parties. It provides that the Plaintiff Class Members will receive compensation for unpaid overtime wages for work performed in the United States at any point during the three-year period preceding the date of Notice. The unpaid overtime compensation will be paid to the Plaintiff Class Members on a *pro rata* basis, based on their respective pay rates and the number of hours they each worked for the Defendants. In addition to their *pro rata* settlement payments for back wages, Burchfield will receive an Incentive Award for his efforts representing the rest of the Plaintiff Class in the prosecution of this case and the achievement of this settlement. Finally, the Agreement provides that the Defendants will pay litigation costs and attorneys' fees to Plaintiffs' Counsel from the gross settlement.

As part of their efforts to resolve this case, the Settling Parties exchanged information and documentation through discovery and settlement discussions focused specifically on the compensable time worked by each Plaintiff Class Member and the possible amounts of back pay they could be entitled to using different methods of calculating overtime compensation. Defendants have conducted a number of witness interviews, and provided over twelve hundred pages of relevant documents regarding pay policies, hours worked and compensation received by the Plaintiff Class Members. Plaintiffs' Counsel conducted a detailed review of the data and

---

[3] Any Plaintiff Class members who choose to opt-in, along with Burchfield and the Opt-In Plaintiff, are collectively referred to as the "Plaintiff Class Members."

documentation provided by the Defendants and spent considerable time with Burchfield, the Opt-In Plaintiff, other Plaintiff Class Members, and witnesses further reviewing and analyzing the documentation provided and conferring about the nature of the Shift Leads' job responsibilities, their compensation, hours worked, and communications (written and oral) with Defendants about their compensation and hours worked. Additionally, Plaintiffs' Counsel invested substantial time assessing the applicable law as it relates to the Plaintiff Class Members' claims and damages, the defenses thereto, and the facts discovered.

Bona fide disputes exist between the Settling Parties. The Settling Parties dispute whether the Shift Leads were classified correctly under the FLSA, which work time is compensable, whether their work hours and overtime wages were calculated properly, whether Defendant Adams is an "employer," and whether the Defendants acted willfully and in bad faith in connection with the classification and compensation of the Shift Leads.

Defendants have denied and continue to deny any liability or wrongdoing, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the case. However, to avoid the burden, expense, inconvenience, and uncertainty of proceeding through trial, the Defendants determined to resolve and settle the case.

Plaintiffs' Counsel have also conducted a thorough investigation of the relevant facts, the claims against Defendants, the defenses (factual and legal) set forth by the Defendants, and the impact of this Agreement on the Plaintiff Class Members. Based on that analysis and an evaluation of a number of factors, including: (i) the number of potential class members; (ii) the number of overtime hours the potential class members might have worked in the United States during the relevant look-back period; (iii) the factual and legal defenses raised by the Defendants during discovery and settlement discussions, including the proper method for calculating overtime

compensation; (iv) the expense and delay associated with continued proceedings which could last far into 2019; and (v) the uncertainty of the outcome of the case, Plaintiffs' Counsel believe that the settlement with the Defendants for the consideration and on the terms set forth in this Agreement is fair, reasonable and adequate and is in the best interests of the Plaintiff Class Members.

The Settling Parties jointly request that the Court enter an Order: (i) granting Approval of the settlement set forth in the Agreement as fair, reasonable and adequate and in the best interests of the Plaintiff Class (the "Approval Order"); (ii) certifying the Plaintiff Class as defined in the Agreement for settlement purposes only; (iii) approving a Notice of Proposed FLSA Collective Action Settlement ("Notice"), attached as Exhibit "E"; (iv) approving a Claim, Waiver, Release and Consent to Join FLSA Collective Action Form ("Claim Form"), attached as Exhibit "F"; (v) authorizing the mailing and emailing of the Notice and Claim Form to all individuals identified by the Defendants as being in the Plaintiff Class; (vi) appointing Peter R. Rosenzweig of Kleinbard LLC as Class Counsel for the Plaintiff Class; (vii) appointing RG2 Claims Administration LLC as Settlement Administrator; and (viii) dismissing the case and all claims with prejudice in accordance with the Agreement.

## II.  ARGUMENT

Because "the provisions of the FLSA are mandatory, and not subject to negotiation and bargaining between employers and employees," any agreement to settle claims under the FLSA must receive court approval.  Sims v. Hous. Auth. City of El Paso, 2012 WL 10862119, at *2 (W.D. Tex. 2012).  "[T]he Court must scrutinize the settlement for fairness before issuing its approval."  Domingue v. Sun Elec. & Instrumentation, Inc., 2010 WL 1688793, at *1 (M.D. La. 2010) (citing Schulte v. Gangi, 66 S.Ct. 925 (1946)); Lynn's Food Stores, Inc. v. United States,

679 F.2d 1350, 1353 (11th Cir. 1982); and <u>Collins v. Sanderson Farms, Inc.</u>, 568 F.Supp. 2d 714, 717 (E.D. La. 2008)). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." <u>Pedigo v. Austin Rumba, Inc.</u>, 722 F. Supp. 2d 714, 736 (W.D. Tex. 2010) (citing <u>Villeda v. Landry's Restaurants, Inc.</u>, 2009 WL 3233405, at *1 (S.D. Tex. 2009)).

In order to approve a settlement of FLSA claims, the Court must determine: 1) whether a bona fide dispute exists between the parties; 2) whether the settlement agreement is a fair and reasonable resolution of the dispute; and 3) whether the requested attorney's fees are fair and reasonable. <u>See</u>, <u>e.g.</u>, <u>Santinac v. Worldwide Labor Support of Illinois, Inc.</u>, 2017 WL 1098828, at *2 (S.D. Miss. 2017); <u>Dyson v. Stuart Petroleum Testers, Inc.</u>, 2016 WL 815355, at *2 (W.D. Tex. 2016).

As detailed below: 1) this case presented many bona fide disputes under the FLSA; 2) the settlement here is fair and more than reasonable as it provides substantial relief to the Plaintiff Class Members in an amount (a) that far exceeds their alleged unpaid overtime calculated on a Fluctuating Workweek method even after the agreed-upon attorneys' fees and litigation costs are deducted, and (b) that matches their alleged unpaid overtime under the standard method of calculation before the agreed-upon attorneys' fees and litigation costs are deducted; and 3) the requested attorneys' fees are fair and reasonable given that Burchfield agreed to them at the outset and Plaintiffs' Counsel achieved an exceptional settlement on his behalf.

A.     **Bona Fide Disputes Exist Between the Settling Parties**

A Court may approve a settlement of FLSA claims only when there is a bona fide dispute between the parties regarding application of the FLSA. "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's

protections as a valid settlement of a legal claim." <u>Sims</u>, 2011 WL 3862194, at *6. An actual dispute over the amount of overtime compensation due to an employee is sufficient to create a bona fide dispute for purposes of this factor. <u>See</u> <u>Martinez v. Bohls Bearing Equip. Co.</u>, 361 F.Supp.2d 608, 631 (W.D. Tex. 2005) ("parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due"); <u>Dyson</u>, 2016 WL 815355, at *2.

Here, there are several bona fide disputes between the Settling Parties. First, there is a bona fide dispute over whether the Defendants misclassified the Shift Lead position as exempt under the FLSA. The second bona fide dispute and, perhaps the most significant to this case and the settlement, concerns the method by which any overtime compensation should be calculated. Burchfield maintains that the regular rate for purposes of overtime compensation should have been calculated by dividing each employee's salary by a fixed number of hours for which that salary is intended to compensate. Defendants oppose the use of that calculation method and maintain that overtime compensation, if any, should have been calculated using the Fluctuating Workweek method which calculates an employee's regular rate by examining each workweek individually, and dividing the salary by the number of hours actually worked in a given workweek.[4] Additionally, there are bona fide disputes between the Settling Parties regarding the number of overtime hours that have been worked by the Shift Leads and whether the Defendants failed to pay at all for certain work performed by the Shift Leads. The Settling Parties dispute whether Defendant Adams is an "employer" as that term is defined by the FLSA. Finally, there are bona

---

[4] The U.S. Department of Labor's implementing regulations provide an alternative way for employers to calculate the regular rate of pay for certain salaried employees. Section 778.114 of the implementing regulations provides that a salaried employee whose hours fluctuate from week to week can reach a mutual understanding with the employer that he or she will receive a fixed amount of compensation per week, regardless of the number of hours that the employee works in that week, and that he or she additionally will receive a rate of fifty percent of the regular hourly pay for any hours over forty worked in that week. <u>See</u> 29 C.F.R. § 778.114(a).

fide disputes between the Settling Parties in relation to whether the Defendants failed to act reasonably and in good faith in connection with the classification and compensation of the Shift Leads. See Dyson, 2016 WL 815355, at *2 (finding a bona fide dispute where plaintiff class alleged that they were inappropriately denied overtime compensation in violation of the FLSA).

The existence of these bona fide disputes between the Settling Parties weighs in favor of approving the settlement.

**B.      The Agreement is Fair and Reasonable**

After determining that there is a bona fide dispute between the parties, the Court must determine whether the proposed agreement is fair and reasonable. See, e.g., Sims, 2012 WL 10862119, at *2 and Dyson, 2016 WL 815355, at *2. In assessing whether a settlement agreement is fair and reasonable, courts reference six factors: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. Dyson, 2016 WL 815355, at *2 (quoting Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982)). The Court should presume that a settlement agreement is fair, particularly when the agreement was the result of an adversarial proceeding. See Sims, 2012 WL 10862119, at *3.

**(1)**      There was no fraud or collusion between any of the parties, Plaintiffs' Counsel and/or Defense Counsel. To the contrary, counsel for the Settling Parties cooperated in good faith from the outset and, despite their firm positions on liability and the willingness to litigate through trial, shared the same goal of working towards a resolution for their respective clients. Ultimately,

after nine months of exchanging information, settlement demands and offers, they were able to reach the agreement for which they now seek approval.

**(2 & 3)** The central issue in this case concerns the method of calculating the overtime pay for the Shift Lead position. The Plaintiff Class argues that the FLSA sets the standard workweek at forty hours and requires employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for any hours worked in excess of forty. See 29 U.S.C. § 207(a)(1). The Defendants disagree and argue that, if the Shift Leads are non-exempt under the FLSA, their overtime pay is calculated by multiplying the number of hours in excess of forty per workweek by the half-time rate—the Fluctuating Workweek method.

This case has progressed well beyond the preliminary stages. The Defendants have filed an Answer (Dkt. No. 24), extensive discovery has been conducted by agreement, many months have been spent calculating hours worked and back-pay, and exchanging numerous demand and offers. If the case were to proceed, Burchfield would have to seek conditional certification of the collective and the Court had ordered the Settling Parties to attend another scheduling hearing to implement a full discovery plan, which would include classwide, merits-based discovery including, but not limited to, further written discovery and numerous depositions of the parties and other witnesses (within Texas and outside of Texas[5]). Such discovery would extend well into 2019. Further, the Defendants could seek to decertify the class and/or file dispositive motions. In all likelihood, a trial in this case would not occur until the Fall of 2019, after the Settling Parties had prepared and filed the Court's detailed Joint Pretrial Order. The settlement at this point provides the Plaintiff Class Members with immediate cash benefit rather than facing more years of distraction, disruption and costly and uncertain litigation. See In re Heartland Payment Systems,

---

[5] Defendant Bravura is headquartered in Aberdeen, Maryland and maintains its principal office there. Depositions of Defendant Adams and Defendant Bravura's representatives would have to be taken in Maryland.

Inc. Customer Date Security Breach Litigation, 851 F.Supp.2d 1040, 1064 (S.D. Tex. 2012) ([w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.).

(4)      To prevail on the claims, the Plaintiff Class faces both legal and factual obstacles in connection with initial threshold issue whether the Shift Lead position is exempt under the FLSA and, then, the issue of whether they worked a fluctuating workweek schedule and clearly understood that, at the inception of employment, they would be paid according to the Fluctuating Workweek method. Each of those inquiries is extremely fact specific and significant additional discovery would be required about job duties, work schedules, pay policies, the Shift Leads' understanding of how they were paid, and communications (written and oral) between the Defendants and the Shift Leads (current and former Shift Leads). Because the Defendants' defenses are based on those same facts, they too face the same obstacles (legal and factual) in attempting to establish their defenses. This case turns on the FLSA exemption status of the Shift Leads and, if non-exempt, the proper method for calculating their overtime wages. It has been made clear during the settlement negotiations that the Settling Parties are very confident that the relevant facts support their respective positions and are prepared to litigate vigorously through trial.

(5)      The range of recovery in this case is extraordinarily large. Using the Fluctuating Workweek method of calculating overtime pay, the Defendants argued that the back wages for the Plaintiff Class, if any, totaled $80,000 in the aggregate. On the other hand, using the standard method of calculating overtime pay, the Plaintiff Class believed the back wages totaled close to $394,000 in the aggregate. By using the standard method of calculation, the settlement obtained by Plaintiffs' Counsel entitles the Plaintiff Class to their full back wages less the agreed-upon

attorneys' fees and litigation costs. That amount is still significantly greater than the amount of full back wages *plus* liquidated damages that the Fluctuating Workweek method would yield.

Of course, at trial there's always the possibility of losing and recovering nothing. The range between $0 and $80,000 (under the Fluctuating Workweek method) is considerable. The range between $0 and $394,000 is enormous in comparison. As such, the settlement at the high end of that range is a substantial and undeniably favorable recovery for the Plaintiff Class.

**(6)** Here, Burchfield (as shown in his Declaration), the present Opt-In Plaintiff, other non-party witnesses, and Plaintiffs' Counsel all agree, without reservation, that this is a tremendous settlement. "The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." Id. at 1068.

After considering each factor identified above, it is respectfully submitted that the Court should find the Agreement to be a fair and reasonable resolution of the bona fide disputes between the Settling Parties.

### C.     The Attorneys' Fees are Fair and Reasonable

"[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees." Santinac, 2017 WL 1098828, at *3 (citing Strong v. BellSouth Telecomm, Inc., 137 F.3d 844, 849 (5th Cir. 1998)). "In common fund cases such as this one, courts in the Fifth Circuit are permitted to use either the percentage method or the lodestar method to calculate attorneys' fees." Id. (citing Union Asset Mgmt. v. Dell, Inc., 669 F.3d 632, 644 (5th Cir. 2012)); see also Dyson, 2016 WL 815355, at *4.

In this case, the Settling Parties submit that the Court should evaluate the requested attorneys' fees using the percentage method. The Agreement provides that the totals for Litigation

Costs, the Incentive Award, and Settlement Administration Costs will first be subtracted from the Gross Settlement Fund. Only after those items have been calculated, Plaintiffs' Counsel will be entitled to an amount equal to 40% of the remaining funds. The final Litigation Costs are $874.89, the Incentive Award (if approved by the Court) is $2,500, and the Settlement Administration Costs are $1,250.

At the outset of the case, Burchfield agreed to this division of any settlement proceeds. The attached Declaration confirms his agreement to and approval of the 40% contingency fee. At the outset, Burchfield and Plaintiffs' Counsel were all aware that Plaintiffs' Counsel would receive no compensation and no reimbursement of the litigation costs they fronted if they were unable to obtain a recovery.

Under the percentage method, the Court must first establish a benchmark percentage fee, which is then evaluated with reference to similar court approved settlement agreements in the circuit. See, e.g., Dyson, 2016 WL 815355, at *4-5. The Court then evaluates the benchmark percentage using the factors outlined in Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714 (5th Cir. 1974) to determine if a deviation from the benchmark percentage is appropriate. Dyson, 2016 WL 815355, at *5; Klein v. O'Neal, Inc., 705 F.Supp.2d 632, 674 (N.D. Tex. 2010).

"In cases where the litigants propose a percentage calculation for fees … district courts generally begin by looking to the parties' proposed percentage as the starting point to determine the benchmark fee." Dyson, 2016 WL 815355, at *4 (citing Klein, 705 F.Supp.2d at 674). The Settling Parties have proposed a benchmark fee of 40%. "No general rule can be articulated as to what is a reasonable percentage of a common fund. Usually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages

are not unprecedented." <u>See</u> <u>In Re Heartland</u>, *supra*, at 1133; citing <u>Camden I Condominium</u> <u>Assn. v. Dunkle</u>, 946 F.2d 768 (11th Cir. 1991); 1 Conte, *Attorney Fee Awards,* § 2.08 text and n. 131.

The Court must then analyze the 40% rate under the <u>Johnson</u> framework to determine if a departure upward or downward is warranted. The Court considers: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases. <u>Dyson</u>, 2016 WL 815355, at *5 (citing <u>Johnson</u>, 488 F.2d at 717-19). The Court need not consider each factor in making its determination. <u>See</u> <u>Louisiana Power & Light Co. v.</u> <u>Kellstrom</u>, 50 F.3d 319, 331 (5th Cir. 1995).

The Settling Parties believe that the 40% rate is reasonable, and do not request any upward variation based on the <u>Johnson</u> analysis. "When the class action successfully recovers a fund for the benefit of a class, it is long settled that the attorneys who created that class recovery are entitled to be reimbursed from the common fund for their reasonable litigation expenses, including reasonable attorneys' fees." *Newberg* § 14.02; <u>*Skelton v. General Motors Corp.,*</u> 860 F.2d 250, 252 (7th Cir. 1988) ("similar to the way plaintiff's attorney may be compensated by a contingency fee, a plaintiff class pays its attorneys by sharing its recovery with them."). Class counsel are not authorized to bill the class directly for their services but must petition the court for an award of

fees reasonable under the circumstances and in light of the monetary benefit created for the class. *Newberg* at § 14.02.

**(1)** Plaintiffs' Counsel have attached their Declarations and Billing Summaries to show the Court the substantial amount of time and labor devoted (by five lawyers and one paralegal) to the representation of the Plaintiff Class, negotiation of the settlement, preparation of the settlement documents for submission to the Court, and consummation of the settlement. Plaintiffs' Counsel expended a significant amount of time and labor to the review and collection of data from the 1,200+ pages of timesheets and payroll records produced by the Defendants. These documents, particularly more than one year's worth of timesheets, had to be reviewed for each of the seven Shift Leads in order to calculate their respective overtime hours and unpaid overtime wages spanning back to January 2017. The task of reviewing each timesheet and applying the proper pay rate to that workweek was tedious and extremely time-consuming. Because FLSA claims are premised on the number of hours worked, the process of reviewing the timesheets requires absolute precision as any missed time can result in a claimant not being made whole for his losses. For this reason, that process cannot be rushed. The full amount of damages incurred by the Plaintiff Class could not be ascertained without a diligent and scrupulous review of the timesheets. The work hours total and pay data for each class member was entered into a running spreadsheet.

Furthermore, Plaintiffs' Counsel was required to calculate the totals twice—once using the standard method of calculating overtime and then again using the Fluctuating Workweek method. Plaintiffs' Counsel had to ensure that their analysis and data compilation was thorough and complete. Even once Plaintiffs' Counsel completed the calculations and presented them, the Defendants contested certain of them, resulting in additional rounds of calculations and continued negotiations. Settlement negotiations concerning the data in the timesheets and calculations of

hours worked and back wages were long and involved as the Settling Parties were confident in the accuracy of their respective calculations.

(2)     As noted above, apart from the threshold issue of misclassification, the central issue in this case dealt with the method of calculating the alleged unpaid overtime wages.  The answer to this turned on whether the Shift Leads, at the commencement of their employment, were made aware of and clearly understood that any overtime pay would be calculated using the Fluctuating Workweek method, such that they agreed to the use of that method.  These are not commonly seen, garden-variety unpaid overtime topics.  Determining whether the Fluctuating Workweek method is applicable and its retroactive application to a particular situation are exceptionally fact-specific issues that require substantial discovery from current employees, former employees, and third-party witnesses.  In this case, the answers to those difficult questions would determine whether the Shift Leads were entitled to back pay and, if so, in what amounts.

(3 & 9)     Class Counsel has twenty-one years' legal experience practicing exclusively in the area of labor and employment law in state courts, federal courts, and administrative agencies around the country.  He has handled wage and hour issues for both employees and employers and, within the past eight years, has been lead counsel in twenty-five FLSA collective action cases, all of which involved Unmanned Aerial Vehicle/System ("UAV/UAS") companies like Defendant Bravura.  Those cases have been and are currently being litigated in Maryland, Virginia, Pennsylvania, Texas, California and Alabama.  During this time period, he has developed a reputation, nationally, for handling unpaid overtime class action cases on behalf of the employees in the UAV/UAS industry.  The skill, efficiency, and reputation of Class Counsel support the reasonableness of the requested fee award.

**(4)**     There is a significant opportunity cost in taking on the representation of a class action case with numerous putative class members dispersed throughout the country (and quite possibly deployed abroad which is common in the defense contractor sector).   It is a massive undertaking that places significant demands on staff and firm resources, especially in smaller firms.   The commitment to take on such a matter is made knowing that other opportunities will necessarily have to be declined, and so was the case here.   Besides Mr. Rosenzweig, the Kleinbard firm has only three litigation associates who are often assisting other lawyers at the firm.   The firm of Moulton, Wilson & Arney, LLP, has four attorneys total.   With a limited number of attorneys between the two firms available to work on this collective action case, there were many other cases and matters that could not be accepted.

**(5 & 12)**     The contingency fee currently utilized by the Kleinbard firm for its FLSA collective action cases is 40%.   In both Davis, et al. v. Neany, Inc., Case No. 8:17-cv-01862-TDC (D. Md.) and Patrick, et al. v. Neany, Inc., Case No. 8:17-cv-02175-GJH, the Court approved Kleinbard's 40% fee arrangement with the Plaintiffs.   The Declaration of Peter R. Rosenzweig, Ex. "C", lists the FLSA collective actions in which he achieved positive results.   See In re Combustion, Inc., *supra* (approving a fee of 36%).

**(6)**     When Burchfield engaged the Kleinbard firm for himself and the proposed class, he requested that the case be handled on a contingency fee basis because he lacked the financial wherewithal to pay hourly fees.   After consideration of the request, the Kleinbard firm agreed and presented the firm's Representation Agreement (the "Contingency Fee Agreement") to him for his review and execution.   "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Forbush v. J.C. Penney Co.,* 98 F.3d 817, 824 (5th Cir. 1996) (internal quotation marks omitted).

The "Contingency Fee Agreement" expressed, in pertinent part:

### *Fees for Legal Services – Contingency Fee Arrangement*

*In consideration of the Firm's professional services rendered in the Litigation, you agree to pay a fee equal to forty (40%) of the total gross sum recovered by way of settlement, court judgment or agency award, including any settlement or award of attorneys' fees. The percentage is calculated on the total amount of any settlement or court judgment and is based on pre-tax dollars.*

*In the event the court awards attorneys' fees separate and apart from the recovery we obtain on your behalf, you agree to pay a fee equal to the greater of: (1) the court award of attorneys' fees; or (2) the 40% fee identified in the prior paragraph.*

*In the event there is no recovery in the Litigation, you will not be obligated to pay any fee for the Firm's services.*

Burchfield, in his individual capacity as the class representative and on behalf of the Plaintiff Class, agreed to that arrangement and executed the "Contingency Fee Agreement."

Because the Kleinbard firm is located in Philadelphia, Pennsylvania, it was required to retain a local counsel in Houston, Texas for this case. The Kleinbard firm selected MWA to act as local counsel. The Kleinbard firm and MWA entered into an agreement under which the Kleinbard firm must compensate MWA for the work its lawyers perform. The Kleinbard firm agreed that it will pay MWA out of the contingency fee payment it receives. The 40% contingency fee is set as the total compensation intended to be divided between both firms. The "Co-Counsel Agreement" between the Kleinbard firm and MWA expressed, in pertinent part:

*My firm has already agreed with the named plaintiffs to represent them and the putative class members on a contingency fee basis. The agreed-upon contingency fee is 40% (after deduction of litigation costs) of any monetary recovery by way of a settlement or court award. If we're able to obtain a monetary recovery, the net contingency fee will be divided in the following manner—25% to Moulton, Wilson & Arney, LLP and 75% to Kleinbard LLC. If we're unable to obtain a monetary recovery, there will be no fee for either of our firms. Finally, our firms will be responsible for all litigation costs on a pro rata basis.*

After the Kleinbard firm formalized its relationship with MWA, it provided another letter to Burchfield (the "Client Consent to Joint Representation") outlining the co-counsel relationship between the two firms and their joint representation of him and the Plaintiff Class. The "Client Consent to Joint Representation" expressed, in pertinent part:

> In our Representation Agreement, it was explained that my firm can engage other attorneys to assist in the prosecution of this case against Bravura. We want to inform you that my firm, Kleinbard LLC ("Kleinbard") has agreed to partner with the law firm of Moulton, Wilson & Arney, LLP ("MWA"), located in Houston, TX.
>
> Also in the Representation Agreement, you agreed that the lawyers will be entitled to a contingency fee equal to forty (40%) of the total gross sum recovered by way of settlement, court judgment or agency award, including any settlement or award of attorneys' fees. If we are able to recover a monetary award in this case, our law firms have agreed to divide such fee in the following manner—75% of to Kleinbard and 25% to MWA. Neither Kleinbard nor MWA will be entitled to anything above the agreed-upon contingency fee of 40%.

Burchfield, on two occasions at the commencement of this case (in the "Contingency Fee Agreement" and the "Client Consent to Joint Representation"), acknowledged and agreed that the Kleinbard firm and MWA, together, would be entitled to a total contingency fee of 40% if they were able to secure a monetary recovery on his behalf. Burchfield believed that division was fair given that the Kleinbard firm and MWA took the risk that if they were unable to secure a recovery, they would receive nothing for their work nor receive any reimbursement for the costs they expended. In his attached Declaration, Burchfield reiterates his belief that the 40% fee is fair and warranted for the work put in on his behalf by the Kleinbard firm and MWA.

**(7)** There were two limitations that presented additional hurdles for Plaintiffs' Counsel. First, due to the nature of their job in the defense contractor sector, several of Defendants' former employees and various third-party witnesses were deployed abroad. The different time zones create obstacles when trying to communicate with those individuals who were stationed overseas.[6]

---

[6] Afghanistan is 9 hours, 30 minutes ahead of EST.

Second, the Shift Leads for Defendant Bravura work in two 12-hours shifts (CST)—the day-shift from 9:00 A.M. – 9:00 P.M. and the night-shift from 9:00 P.M. – 9:00 A.M.  These timing issues made communications with the night shift Shift Leads far more difficult and at times caused delays at crucial points during the case.  In fact, Burchfield himself works on the night-shift. Notwithstanding these obstacles, Plaintiffs' Counsel were able to sufficiently communicate with the Shift Leads and witnesses to gather the information and perform the data analysis necessary to bring this case to a successful resolution.

(8)     Plaintiffs' Counsel resolved this case, obtaining a significant settlement fund which makes $375,000 available to seven Shift Leads.  The settlement fund is sufficient to pay each Plaintiff Class Member far more than his full back-pay based on a Fluctuating Workweek method, or the full amount of back-pay using the standard method of calculation (before the agreed-upon attorneys' fees and expenses are deducted from the settlement fund).[7]  Each Plaintiff Class Member will be paid an overtime award that has been calculated, negotiated and agreed to by the Settling Parties.  The Overtime Award for each Plaintiff Class Member has been calculated as follows: (a) for overtime hours worked through the workweek beginning on February 11, 2018, the payment will be computed by multiplying the number of overtime hours (performed within the United States) by the overtime rate of time-and-a-half; and (b) for overtime hours worked after the workweek beginning on February 11, 2018, the payment will be computed by multiplying the number of overtime hours (performed within the United States) by one-half times the regular hourly rate.  The Settling Parties agree that half of the Overtime Award represents back-pay and the other half represents liquidated damages.

---

[7]   A Plaintiff Class Member's predetermined settlement amount may be increased or decreased *pro rata*, if at all, based on the number of Shift Leads who choose to opt into the settlement.

(10)     Many attorneys, even those who specialize in employment law, would decline representation of a FLSA collective action matter on a strict contingency fee basis with numerous potential plaintiffs dispersed throughout the United States; many of whom could be overseas at any given time making the routine logistics of case investigation and discovery far more difficult. Plaintiffs' Counsel bore a substantial risk of developing and carrying this case through federal court, especially against sophisticated Defendants and their counsel who are experienced in matters involving wage and hour laws.  Despite those risks and demands, Plaintiffs' Counsel agreed to represent Burchfield, navigated the complex and novel substantive issues under the FLSA, and pursued the claims to a successful settlement.

(11)     The relationship between the Kleinbard firm and Burchfield commenced close to a year and a half ago in June 2017 when Mr. Rosenzweig was first contacted by Burchfield and several other of Defendants' employees and former employees.  Those individuals inquired about pay for the significant overtime hours they had worked and were working.  Following several months of discussions and fact-finding, the decision to commence a case was made.  In February 2018, the Complaint in this case was filed.

It is respectfully submitted that after consideration of the Johnson factors and recognition of the tremendous settlement obtained, the attorneys' fees requested by Plaintiffs' Counsel are warranted and are what Burchfield authorized prior to the initiation of this case.  The attorneys' fees requested are proportionate in relation to the substantial settlement amounts made available to the Plaintiff Class.

## D.     **Burchfield's Incentive Award**

In addition to the attorneys' fees and expenses awarded to Plaintiffs' Counsel, the Agreement provides for an "Incentive Award" in the amount of $2,500 for Burchfield.  "Courts

approve service awards for named plaintiffs and class representatives insofar as they are reasonable." See, e.g., Rodriguez, 2015 WL 12866212, at *6. In this case, Burchfield, as the only lead plaintiff, was extensively involved with Plaintiffs' Counsel in fact investigation, evaluating the claims, developing case strategy, providing documents and information, reviewing documents and wage/hour data, attending extensive telephone conferences, and engaging in continuous communications with Plaintiffs' Counsel. The work and effort put into the prosecution of this case by Burchfield, who is still employed by Defendants, helped to increase the value of the total settlement for the entire class. Given this level of involvement and the ultimate success of the case for the class, an Incentive Award to Burchfield in the amount of $2,500 is reasonable.

## III. <u>CONCLUSION</u>

The Settling Parties believe that the terms and conditions of the settlement are fair, reasonable, adequate, and in their best interests. As noted above, the proposed Agreement was reached following the exchange of information, an enormous amount of documentation and wage and hour data, and after nine months of extensive negotiations. Because of the defenses asserted by the Defendants and the possibility that the Defendants may have successfully defeated or limited some or all of the Shift Leads' claims, including those related to compensation for unpaid overtime and liquidated damages, the Settling Parties believe that the settlement represents a fair compromise of their bona fide disputes. Moreover, given the near certainty that absent a settlement, this case would proceed to trial, a compromise of the claims allows the Settling Parties to avoid incurring the additional costs and delay associated with trial and possible appeal.

The Settling Parties jointly request that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) direct the Settling Parties to implement and complete

the notice and claims process as set forth in the Agreement; and (3) dismiss the case and all claims with prejudice in accordance with the Agreement.

Dated: November 13, 2018

Respectfully submitted,

By: /s/ Cynthia R. Levin Moulton_____
     Cynthia R. Levin Moulton
     State Bar No.  12253450
     800 Taft Street
     Houston, Texas  77019
     Telephone:  (713) 353-6699
     Telecopier:  (713) 353-6698
     Email: cmoulton@moultonwilsonarney.com

     ATTORNEY-IN-CHARGE FOR JONATHAN
     BURCHFIELD, INDIVIDUALLY AND ON
     BEHALF OF ALL OTHERS SIMILARLY
     SITUATED

Of Counsel:

MOULTON, WILSON & ARNEY, L.L.P.
Lance C. Arney
State Bar No. 00796137
800 Taft Street
Houston, Texas  77019
Telephone : (713) 353-6699
Telecopier:  (713) 353-6698
Email: larney@moultonwilsonarney.com

Peter R. Rosenzweig
(admitted *pro hac vice*)
Kleinbard LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
Tel: (267) 443-4120
Fax:  (215) 568-0140

**HOLLAND & KNIGHT LLP**

By:   *s/ Charles T. Jeremiah*
       Charles T. Jeremiah
       charles.jeremiah@hklaw.com
       Texas Bar No. 00784338
       Jason Huebinger
       jason.huebinger@hklaw.com
       Texas Bar No. 24065460
       1100 Louisiana Street, Suite 4300
       Houston, Texas 77002
       Telephone:  (713) 821-7000
       Facsimile:   (713) 821-7001

**ATTORNEYS FOR DEFENDANT
BRAVURA INFORMATION
TECHNOLOGY SYSTEMS, INC., AND
CLAUDINE ADAMS**

Of Counsel:

Holland & Knight LLP
Kara M. Ariail
(admitted *pro hac vice*)
Kara.Ariail@hklaw.com
Virginia Bar No. 46817
Kevin D'Olivo
(admitted *pro hac vice*)
Kevin.DOlivo@hklaw.com
Virginia Bar No. 90655
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia  22102
Telephone : (703) 720-8027